1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CAROLYN MARTIN,                          CASE NO. 10CV1879WQH(MDD)

12                          Plaintiff,        ORDER

             vs.
13   NAVAL CRIMINAL INVESTIGATIVE
     SERVICE, ("NCIS"); MARK D.
14   CLOOKIE, NCIS Director; WADE
     JACOBSON, NCIS Acting Special Agent
15   in Charge; MARINE CORPS WEST
     FIELD OFFICE; SEAN SULLIVAN,
16   Staff Judge Advocate; MARINE CORPS
     RECRUIT DEPOT SAN DIEGO;
17   GERALD MARTIN, "Jerry," NCIS
     Special Agent; RAY MABUS, Secretary
18   of the Navy; JOHN DOES 1-7,

19                          Defendants.

20

21   HAYES, Judge:

22          The matter before the Court is the Motion to Dismiss the First Supplemental Complaint

23   filed by the United States.  (ECF No. 78).

24   **I.      Background**

25          On September 9, 2010, Plaintiff initiated this action by filing a Complaint for

26   Declaratory and Injunctive Relief and Damages.  (ECF No. 1).

27          On December 17, 2010, Defendant Agent Gerald Martin ("Agent Martin") filed a

28   Motion to Dismiss the claims of retaliation in violation of the First Amendment and violation

                                        - 1 -                    10cv1879 WQH (MDD)

of the Fourth Amendment.  (ECF No. 31).  On that same day, the United States filed a Motion to Dismiss the claims of retaliation in violation of the First Amendment, violation of the Fifth Amendment for unreasonable interference with employment, and violation of the First Amendment for interference with right of access to court on behalf of Defendants Naval Criminal Investigative Service, Mark D. Clookie; Wade Jacobson, Marine Corps West Field Office; Sean Sullivan, Marine Corps Recruit Depot San Diego, and Ray Mabus.  (ECF No. 32).

On August 3, 2011, The Court issued an Order granting in part and denying in part the Motions to Dismiss.  The Court dismissed Plaintiff's Fourth Amendment claim and request for damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and Plaintiff's claim for violation of Fifth Amendment due to unreasonable interference with employment.

On May 7, 2012, the First Supplemental Complaint was filed against the United States.  (ECF No. 68).

On June 11, 2012, Defendant United States filed the Motion to Dismiss the First Supplemental Complaint.  (ECF No. 78).  On July 2, 2012, Plaintiff filed an Opposition.  (ECF No. 80).  On July 16, 2012, Defendant United States filed a Reply.  (ECF No. 84).

## II.   Allegations of the Complaint

Plaintiff has worked as a federal contract investigator for the past ten years performing mostly personnel security investigations and, for the past four years, performing military criminal defense investigations.  Plaintiff has conducted approximately 40 criminal defense investigations in the military justice system since 2006.  As a criminal defense investigator, Plaintiff performs investigations including "interviewing the accused and the witnesses, conducting an investigation of the scene of the alleged crime, engaging in other background investigation, communicating with defense counsel about [Plaintiff's] findings, and writing reports for defense counsel."  (ECF No. 1 at ¶ 21).  Plaintiff "often testifies to bring evidence before the court [and] sometimes assists the defense in post-trial matters ...."  *Id*.  Plaintiff's military criminal defense investigations "have enabled her clients' attorneys to undermine

prosecution testimony in courts-martial in a number of cases." *Id*. at ¶ 22.

"NCIS retaliated against [Plaintiff] because she is a zealous, effective defense investigator." *Id.* at ¶ 2. "Since around June 2009, military law enforcement personnel, including NCIS Special Agent Martin, an unknown agent ... and various Military Police ... have harassed and intimidated [Plaintiff] on account of her defense investigations." *Id*. at ¶ 26.

On June 29, 2009, Plaintiff's vehicle was pulled over by four Military Police Officers as she left the parking lot of the Legal Services Support Section-Echo in Camp Pendelton for failing to display a California vehicle registration sticker. One of the Military Police "acknowledged that her vehicle displayed a valid sticker ... demanded [Plaintiff's] identification and credentials and eventually issued a warning citation." *Id*. at ¶ 27.

On June 30, 2009, Plaintiff's vehicle was pulled over as she entered Camp Pendelton, although she had "entered Camp Pendelton hundreds of times previously and had never previously been pulled over," and a Military Police Officer asked for her identification. *Id*. at ¶ 28. "After [Plaintiff] produced her driver's license from inside her Defense Intelligence Agency credential holder, she was allowed to leave." *Id*.

On July 23, 2009, a Military Police vehicle and an unmarked car pulled Plaintiff's vehicle over as she was leaving the Legal Services Support Section-Echo in Camp Pendelton. The Military Police officer "initially said that he had clocked [Plaintiff] speeding, although he later said someone had called to tell him that she was speeding." *Id*. at ¶ 29. "It quickly became clear to [Plaintiff] that the allegation of speeding was a pretext for interrogating [Plaintiff] about her credentials." *Id*. at ¶ 30. "A male voice from the unmarked car" demanded Plaintiff's Defense Intelligence Agency credentials. *Id.* Two more Military Police vehicles arrived and a Military Police Officer asked Plaintiff whether she had posed as an NCIS officer or used NCIS credentials. The Military Police Officer asked for Plaintiff's permission to search her person and vehicle and Plaintiff "denied consent to search and requested an attorney." *Id*. at ¶ 32. The Military Police Officer "responded that she was not under arrest, but he told [Plaintiff] that she was not free to leave and that he would not allow

her to call an attorney." *Id*.  The Military Police Officer made a phone call and five armed Military Police Officers "surrounded [Plaintiff] on all sides." *Id*. at ¶ 34.  The Military Police Officer told Plaintiff that "a search warrant for her vehicle and person was on its way." *Id*. After being detained for one hour and forty-five minutes, Plaintiff told the Military Police Officer that they could search her car.

"NCIS Special Agent Martin arrived soon after the search with another marked [Military Police] vehicle." *Id*. at ¶ 37.  "Agent Martin told [Plaintiff] that he had received a call from a [Military Police Officer] reporting that [Plaintiff] had presented NCIS credentials at the Camp Pendelton gate." *Id*.  Plaintiff "denied this false allegation." *Id*.

The Military Police Officer told Plaintiff that he had called the Defense Intelligence Agency and they directed him to confiscate her Defense Intelligence Agency credentials.  The Military Police Officer took Plaintiff's Defense Intelligence Agency credentials, which Plaintiff used to perform her contract investigation work, over Plaintiff's protest.  The Military Police Officer "turned the credentials over to Agent Martin."  *Id*. at ¶ 38.  Plaintiff was escorted off the military base after being detained for a total of two hours.

On July 27, 2009, Computer Science Corporation, the sponsoring agent for Plaintiff's Customs and Border Patrol credentials, which Plaintiff used to perform her contract investigation work, recalled Plaintiff's credentials.

On August 4, 2009, the Military Police Officer who had previously detained Plaintiff on July 23, followed Plaintiff's vehicle out of a restaurant parking lot in Carlsbad, but Plaintiff "made some unexpected turns" and the Military Police Officer "apparently lost sight of [Plaintiff]" so he could not follow her home.  *Id*. at ¶ 42.

On August 13, 2009, Plaintiff was in a courtroom in the Legal Services Support Section-Echo in Camp Pendelton and a military prosecutor told her that "an investigator was looking for her" and handed her a piece of paper with the initials of the Office of Personnel Management and the name "Scot Rezendes" written on it.  *Id*. at ¶ 43.

On August 17, 2009, the California Bureau of Security and Investigative Services sent Plaintiff a cease and desist letter ordering her to stop operating as a private investigator without

a state license although it had determined in 2007 that Plaintiff was not subject to state licensing requirements.  As a result of a later unrelated subpoena of records from the California Bureau of Security and Investigative Services, Plaintiff learned that "Special Agent Martin [had] informed [the Bureau of Security and Investigative Services] that NCIS was investigating [Plaintiff] for impersonating a federal officer." *Id.* at ¶ 45.

On October 27, 2009, NCIS Agent Gonzales followed Plaintiff from the Legal Services Support Section-Echo to the brig in Camp Pendelton and questioned Plaintiff about her credentials and her employer.

"NCIS agents have engaged in surveillance of [Plaintiff] and her home." *Id.* at ¶ 47. Plaintiff was also informed that photos of her face and her car were posted on the "'be on the lookout' board at the NCIS Field Office at the Marine Corps Air Station Miramar [in early 2010]." *Id.*  Surveillance of Plaintiff is ongoing.

On May 3, 2010, at 6:55 a.m., Special Agent Martin and the Military Police Officer who had detained Plaintiff on July 23 appeared at Plaintiff's home.  After Plaintiff opened the door, Agent Martin held a document and said "Carolyn, you need to take this." *Id.* at ¶ 49.  Plaintiff refused and "Agent Martin threw the document at her, striking her in the face ... [and] muttered 'You've been served.'" *Id.*  The document was a District Court Violation Notice completed by Agent Martin charging Plaintiff with impersonating a federal officer on July 23, 2009 at Camp Pendelton.  The violation notice was defective and Plaintiff "has never received a court date or other further notice regarding this purported charge." *Id.* at ¶ 50.

"Approximately thirty minutes after this confrontation, Agent Martin and [the Military Police Officer] returned ...." *Id.* at ¶ 51. Plaintiff did not answer the door and she "subsequently noticed that the glass window in her front door had been broken by the pounding of either or both Agent Martin and [the Military Police Officer]." *Id.*

In the First Supplemental Complaint, Plaintiff Carolyn Martin asserts the following claims against Defendant United States for damages: (1) intentional infliction of emotional distress; (2) battery; (3) malicious trespass; (4) abuse of process; and (5) false imprisonment.

**III.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## IV.    Discussion

### A.    Count One:  Intentional Infliction of Emotional Distress

Defendant United States contends that Plaintiff's allegations of intentional infliction of emotion distress are conclusory and insufficient as a matter of law.  Defendant contends that the actions of Agent Martin and the Military Police Officer were not extreme or outrageous.  Defendant contends that a copy of the district court violation notice was attached to the Complaint and does not appear to be crumpled or folded indicating it was a "less-than-ideal paper projectile."  (ECF No. 78-1 at 18 n.2).  Defendant contends that "Plaintiff has set forth

no facts that plausibly suggest any of the Defendants intended to harm her. The conduct about which Plaintiff complains is upsetting only because of her belief that NCIS was out to get her." (ECF No. 84 at 9). Defendant contends that Plaintiff has not shown that her emotional distress was severe.

Plaintiff contends that "[D]efendants' conduct was outrageous because it consisted of a persistent course of harassment and constituted an abuse of authority. Their campaign of harassment and intimidation against Plaintiff easily constitutes outrageous conduct on its own." (ECF No. 80 at 24). Plaintiff contends that she adequately alleged that she suffered severe emotional distress on the grounds that she was humiliated by the unlawful detention, she was "constantly fearful" of the surveillance of her home, and she "was intimidated by [Defendants'] aggressive conduct" in breaking the window at her home. *Id*. at 26.

To state a claim for intentional infliction of emotional distress, Plaintiffs must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citing *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991)). In order to be "outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Garamendi v. Golden Eagle Ins. Co.*, 128 Cal. App. 4th 452, 480 (2005). Severe emotional distress "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Hailey v. California Physicians' Service*, 158 Cal. App. 4th 452, 476 (2007).

Viewing the allegations in the Complaint as true, Plaintiff has alleged defendants "retaliated against [Plaintiff] because she is a zealous, effective defense investigator.... [and have] harassed and intimidated [Plaintiff] on account of her defense investigations." (ECF No. 1 at ¶¶ 2, 26). Plaintiff has alleged several instances of alleged harassment has alleged that she was "embarrassed and humiliated" she felt "helpless" "fearful" and "very frustrated," she was "intimidated" "afraid for her safety," and "frightened." *Id*. at ¶¶ 35, 39, 42, 47, 51. The

Court finds that Plaintiff has alleged sufficient facts to support the claim that she suffered severe emotional distress.  The Court finds the Complaint alleges sufficient facts to state a claim of intentional infliction of emotional distress.  The Motion to Dismiss count one for intentional infliction of emotional distress is DENIED.

### B.    Count Two:  Battery

Defendant contends that Plaintiff's allegations of battery are conclusory and insufficient as a matter of law.  Defendant contends that "Plaintiff's allegations give rise to the reasonable inference that SA Martin did not mean for the notice to fly into Plaintiff's face." (ECF No. 78-1 at 22).  Defendant contends that "SA Martin was not committing either an unlawful or illegal or wrongful act when he threw the piece of paper at Plaintiff; he was serving a court notice. That the notice was later found to have no legal effect does not render SA Martin's conduct wrongful or unlawful."  (ECF No. 84 at 13).

Plaintiff contends: "While the government is free to argue at trial that Agent Martin did not mean for the notice to fly into Plaintiff's face, on this motion the Court must infer in Plaintiff's favor that [Agent Martin]  intended to throw the document at Plaintiff, resulting in a harmful or offensive contact ...."  (ECF No. 80 at 19) (quotation and citation omitted). Plaintiff contends that her allegation that she was "terrified" is sufficient to show that the contact was offensive and that she suffered harm.

"The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (2009).  "A harmful contact, intentionally done is the essence of a battery." *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991) (citations omitted); *see also People v. Collins*, 10 Cal. App. 4th 690, 694 n.2 (1992) ("The slightest [unlawful] touching, if done in an insolent, rude, or an angry manner, is sufficient."); *Inter-Insurance Exchange v. Lopez*, 238 Cal. App. 2d 441, 445 (1965) (battery can arise from "contact brought about by an object or substance thrown or launched or set in motion by a defendant").

1    Viewing the allegations in the Complaint as true, Plaintiff has alleged that "Agent

2  Martin threw [a violation notice] at [Plaintiff], striking her in the face ... [and] muttered

3  'You've been served.'" (ECF No. 1 at ¶ 49). Plaintiff has alleged: "Approximately thirty

4  minutes after this confrontation, Agent Martin and [the Military Police Officer] returned ...."

5  *Id.* at ¶ 51. Plaintiff has alleged that she did not answer the door and she "subsequently noticed

6  that the glass window in her front door had been broken by the pounding of either or both

7  Agent Martin and [the Military Police Officer]." *Id.* The Court finds the Complaint alleges

8  sufficient facts to state a claim of battery. The Motion to Dismiss count two for battery is

9  DENIED.

10         **C.     Count Three: Malicious Trespass**

11    Defendant contends that "[a]pproaching someone's front door and knocking on the door

12  does not constitute a trespass." (ECF No. 78-1 at 23). Defendant contends that "SA Martin

13  and the unidentified male physically entered an area accessible to the public, never went

14  beyond that area, and as a matter of law did not commit the tort of trespass." (ECF No. 84 at

15  14). Defendant contends that "Plaintiff does not allege that, on either occasion, she told the

16  officers to leave her property. She does not allege that her property was gated, that she had

17  posted 'no trespassing' signs, or that her front door was not otherwise accessible without

18  restriction by a member of the general public." (ECF No. 78-1 at 24). Defendant also

19  contends that Agent Martin and the Military Police Officer had authority as law enforcement

20  officers to enter the land and lawfully discharge their duties.

21    Plaintiff contends that "[t]here is nothing in the facts to indicate that Plaintiff consented

22  to their entry onto the doorstep of her home for the purpose of terrorizing her with a falsified

23  criminal charge." (ECF No. 80 at 28). Plaintiff contends that Defendant is not entitled to law

24  enforcement privileged because Agent Martin and the military police officer were engaged in

25  "illegitimate activities." *Id.* at 29.

26    "'A trespass is an invasion of the interest in the exclusive possession of land, as by entry

27  upon it . . . .'" *Capogeannis v. Superior Court*, 15 Cal. Rptr. 2d 796, 799 (Cal. Ct. App. 1993)

28  (quoting *Wilson v. Interlake Steel Co.*, 649 P.2d 922, 925 (Cal. 1982)). "The cause of action

for trespass is designed to protect possessory ... interests in land from unlawful interference." *Id.* (citation omitted). "One who is on the land of others without their consent and against their will, is a trespasser." *MacLeod v. Fox West Coast Theatres Corp.*, 74 P.2d 276, 279 (Cal. 1937) (internal quotation marks omitted); *see also Miller v. NBC*, 187 Cal. App. 3d 1463, 1480 (1986).

A trespass is not shown when an individual has "proper occasion either of business or courtesy or information, etc." *See Duval v. Rowell*, 269 P.2d 249, 251 (Cal. App. Dep't Super. Ct. 1954); *see also Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964) (overruled on unrelated grounds in *U.S. v. Perea-Rey*, __ F.3d __, 2012 WL 1948973 (9th Cir. May 31, 2012)) ("Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se . . . for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law."). In addition, a trespass is not shown by "the entry of a law enforcement officer upon the land of another in the lawful discharge of his duties...." *Uptown Enter. v. Strand*, 15 Cal. Rptr. 486, 490 (Cal. Ct. App. 1961) (citations omitted).

Viewing the allegations in the Complaint as true, Plaintiff has alleged that Agent Martin and the military police officer entered her land "with the malicious intent to give her a fraudulent violation notice." (ECF No. 68 at ¶ 16). Plaintiff has alleged that Agent Martin and the military police officer's intent was to "retaliate against [Plaintiff] because she is a zealous, effective defense investigator.... [and] harass and intimidate [Plaintiff] on account of her defense investigations" (ECF No. 1 at ¶¶ 2, 26). At this stage in the case, Plaintiff has alleged that Agent Martin and the military police officer entered Plaintiff's land without "proper occasion" or "in the lawful discharge of his duties" by alleging that Agent Martin and the military police officer entered Plaintiff's land with the improper intent and purpose of harassing and intimidating Plaintiff. *Duval*, 269 P.2d at 251; *Uptown Enter.*, 15 Cal. Rptr. at 490. The Court finds the Complaint alleges sufficient facts to state a claim of malicious

trespass.  The Motion to Dismiss count three for malicious trespass is DENIED.

### D.  Count Four: Abuse of Process

Defendant contends that "the court notice cannot be considered part of any judicial process because the notice has no force and effect of law." (ECF No. 78-1 at 26).  Defendant contends that the fact of the notice itself cannot serve as the basis of a claim for abuse of process.  Defendant contends that Plaintiff must allege some abuse subsequent to the use of process.  Defendant contends that the violation notice was ineffective.  Defendant contends: "Because no judicial process occurred, no abuse of process occurred."  (ECF No. 84 at 15).

Plaintiff contends that "Agent Martin misused the power of this Court by serving Plaintiff with a fraudulent violation notice that has no force or effect of law for the purpose of intimidating and harassing her." (ECF No. 80 at 21) (quotation and citation omitted).  Plaintiff contends that the violation notice is "process" within the meaning to a claim for abuse of process on the grounds that "it is the functional equivalent of an indictment or information for petty offenses and compels appearance in court for adjudication."  *Id.*  Plaintiff contends that commencement of litigation is not an essential element of a claim for abuse of process.

"To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006) (citations omitted).  "The essence of abuse of process lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." *Meadows v. Bakersfield Sav. & Loan Ass'n*, 250 Cal. App. 2d 749, 753 (1967) (quotation omitted); *see also ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 644 (Cal. Ct. App. 2001).

"Process" is the "means of compelling a defendant to appear in court" or the "means whereby a court compels compliance with its demands." *Meadows*, 250 Cal. App. 2d at 753. Under federal rules: "The trial of a petty offense may also proceed on a citation or violation notice." Fed. R. Crim. P. 58(b)(1); *see also U.S. v. Boyd*, 214 F.3d 1052, 1057 (9th Cir. 2000) ("[A] violation notice is completed by a law enforcement officer alone, without the oversight

1    of a magistrate.")

2         Viewing the allegations in the Complaint as true, Plaintiff has alleged that Agent Martin

3    and the military police officer "willfully and wrongfully created the purported violation notice

4    and willfully and wrongfully purported to serve the violation notice on Plaintiff with the

5    motive of using the violation notice to retaliate against Plaintiff for her activities as a defense

6    investigator and otherwise to harass and harm her." (ECF No. 68 at ¶ 19). Plaintiff has alleged

7    that Agent Martin and the military police officer's intent was to "retaliate against [Plaintiff]

8    because she is a zealous, effective defense investigator.... [and] harass and intimidate [Plaintiff]

9    on account of her defense investigations" (ECF No. 1 at ¶ ¶ 2, 26). Plaintiff has alleged that

10   Agent Martin committed a willful act in the use of the process by serving her with a violation

11   notice in order to retaliate against and harassment of Plaintiff. The Court finds the Complaint

12   alleges sufficient facts to state a claim of abuse of process. The Motion to Dismiss count four

13   for abuse of process is DENIED.

14         **E.    Count Five: False Imprisonment**

15         Defendant contends that although Plaintiff alleges that Defendants did not have

16   reasonable suspicion or probable cause to believe that she had presented NCIS credentials at

17   the gate, "[t]he facts pleaded in her Complaint demonstrate the opposite." (ECF No. 78-1 at

18   28). Defendant contends that the United States was "justified in detaining Plaintiff because

19   ... it had probable cause to stop her." (ECF No. 84 at 16). Defendant contends that the

20   Complaint alleges that the military police officers that detained her and took her credentials

21   told Plaintiff that another military police officer told him that Plaintiff had used NCIS

22   credentials. Defendant contends that "the law enforcement agents were properly investigating

23   whether [Plaintiff] committed a felony." (ECF No. 78-1 at 30).

24         Plaintiff contends that the Complaint alleges "false allegation[s]" by the military police

25   officers as follows: that Plaintiff was speeding, that Plaintiff presented NCIS credential, and

26   that Agent Martin received a call regarding Plaintiff's credentials. (ECF No. 80 at 15).

27   Plaintiff contends that Defendant will have an opportunity to carry its burden to show that the

28   detention was justified in a summary judgment motion or at trial.

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.,* 80 Cal. App. 4th 485, 496 (2000): *see also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (stating that false imprisonment is the "'unlawful violation of the personal liberty of another.") (quotation omitted). False imprisonment is not shown when the detention of an individual is pursuant to lawful privilege. *See Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 (9th Cir. 2003) (quoting *Easton v. Sutter Coast Hosp*., 95 Cal. Rptr. 2d 316, 323 (Cal. Ct. App. 2000) (citation omitted)); *Lyons v. Fire Ins. Exchange*, 74 Cal. Rptr. 3d 649, 655 (Cal. Ct. App. 2008) (citations omitted).

Viewing the allegations in the Complaint as true, Plaintiff has alleged that she was detained and she was told that "she was not free to leave." (ECF No. 1 at ¶ 32). Plaintiff has alleged that she was not speeding although the military police officer who initially detained Plaintiff stated that "someone had called to tell him that she was speeding." *Id*. at ¶ 29. Plaintiff has alleged that "the allegation of speeding was a pretext for interrogating her about her credentials." *Id*. at ¶ 30. Plaintiff alleged that she did "not presented her DIA credentials to anyone ...." *Id*. Plaintiff has alleged that Defendants' justifications for detaining Plaintiff were based on "false allegation[s]" *Id*. at ¶ 37. Plaintiff has alleged that Defendants' "intentionally confined Plaintiff without lawful justification." (ECF No. 68 at ¶ 22). Plaintiff has alleged that "[n]one of the Defendants ever had reasonable suspicion or probable cause to believe that Ms. Martin had presented NCIS credentials or otherwise impersonated an NClS officer." (ECF No. 1 at ¶ 37). Plaintiff has alleged that her detention was "without lawful privilege." *Easton,* 80 Cal. App. 4th at 496. The Court finds the Complaint alleges sufficient facts to state a claim of false imprisonment. The Motion to Dismiss count five for false imprisonment is DENIED.

**V.    Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss the First Supplemental

//

1  //

2  Complaint (ECF No. 78) filed by the United States is DENIED.

3  DATED:  August 1, 2012

4                                        *William Q. Hayes*
                                         **WILLIAM Q. HAYES**

5                                        United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28