UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN MARTIN,<br><br>          Plaintiff,<br>v.<br><br>NAVAL CRIMINAL INVESTIGATIVE SERVICE (NCIS); MARK D. CLOOKIE, NCIS DIRECTOR; WADE JACOBSON, NCIS ACTING SPECIAL AGENT IN CHARGE, MARINE CORPS WEST FIELD OFFICE; SEAN SULLIVAN, STAFF JUDGE ADVOCATE, MARINE CORPS RECRUIT DEPOT SAN DIEGO; GERALD "JERRY" MARTIN, NCIS SPECIAL AGENT; RAY MABUS, SECRETARY OF THE NAVY; JOHN DOES 1-7,<br><br>          Defendants. | Civil No. 10cv1879 WQH (NLS)<br><br>**ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE NO. 1, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>[Doc. No. 92] |

      The parties ask this court to determine a discovery dispute regarding the applicability of certain privileges and protections to subpoenaed documents. For the following reasons, the court determines the discovery dispute and grants in part and denies in part Plaintiff's motion to compel.

**I.    RELEVANT BACKGROUND**

      This civil rights case was filed by a civilian military criminal defense investigator who alleges that the Naval Criminal Investigative Service (NCIS) violated her first amendment rights by issuing a blanket directive banning her from entering the courtroom at the Marine Corps Recruit Depot (MCRD). She also alleges claims under the Federal Tort Claims Act (FTCA) for intentional infliction of emotional

distress, battery, malicious trespass, abuse of process and false imprisonment because NCIS harassed and retaliated against her for her work for criminal defendants in their cases.  NCIS denies the allegations and says they were conducting a legitimate investigation into Plaintiff's improper use of government credentials to get on base at Camp Pendleton.

In initial disclosures, defendant NCIS produced documents related to the investigation of Plaintiff.  The information included documents provided by NCIS and other entities to the U.S. Attorney's Office for the Southern District of California (USAO), and identified a former Assistant United States Attorney, Rees Morgan, as a potential witness.  NCIS stated, "Rees Morgan, formerly an AUSA, U.S. Attorney's Office, Southern District of California, advised NCIS on the criminal prosecution of Plaintiff, [and was] involved in the issuance of a citation to Plaintiff. Mr. Morgan is no longer with the U.S. Attorney's Office."

Plaintiff issued a deposition subpoena for Rees Morgan.  To prepare for that deposition, Plaintiff also issued a subpoena duces tecum on the custodian of records for the USAO seeking all notes, memoranda, communications or other documents, whether internal or external, concerning plaintiff Carolyn Martin, which were created pursuant to any criminal investigation of her.[1]  The USAO responded that it has seven categories of documents regarding Plaintiff, and has agreed to produce these four categories of documents:

- NCIS Reports of Investigation ("ROIs");
- Pleadings from the instant case;
- Evidence received pursuant to a grand jury subpoena; and
- Communications between NCIS agents and the various AUSAs assigned to the USAO case.

The USAO, however, has refused to produce these categories of documents:

- Grand jury materials;
- AUSAs' research and attorney notes; and,
- Communications between attorneys within the USAO.

---

[1] The parties have postponed the deposition of Mr. Morgan pending the outcome of this discovery dispute.

The parties also disagree about the discoverability of Mr. Morgan's impressions about Plaintiff's investigation.

## II. DISCUSSION

### A. Grand Jury Materials.

#### 1. Legal Standard.

In general, grand jury proceedings remain secret. Fed. R. Crim. Proc. 6(e)(2). They may be disclosed in accordance with only a few strict exceptions or pursuant to a court order: "The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter: preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. Proc. 6(e)(3)(E)(i). To disclose a grand jury matter that is connected to a judicial proceeding,

> A petition to disclose . . . must be filed in the district where the grand jury convened. Unless the hearing is ex parte--as it may be when the government is the petitioner--the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:
> (i) an attorney for the government;
> (ii) the parties to the judicial proceeding; and
> (iii) any other person whom the court may designate.

Fed. R. Crim. Proc. 6(e)(3)(F).

Grand jury material may be disclosed "for civil purposes in appropriate cases." *U.S. v. Dondich*, 460 F. Supp. 849, 857-858 (N.D. Cal. 1978). To break the secrecy of grand jury proceedings, the party seeking disclosure has the burden to show:

> [1. T]he material . . . is needed to avoid a possible injustice in another judicial proceeding, . . . [2] the need for disclosure is greater than the need for continued secrecy, and . . . [3] the request is structured to cover only material so needed.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222-223 (1979). To meet this burden the petitioner must offer specific facts, as opposed to pure speculation, for why the balance should tip in her favor. *U.S. v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (denying motion to disclose grand jury transcripts because defendant did not allege specific facts to support the motion).

The court must balance the petitioner's need with "the immediate effects upon a particular grand jury [and] also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222-223. Grand jury proceedings must generally remain secret to accomplish these goals:

> (1) . . . prevent the escape of prospective indictees; (2) . .. insure freedom to the grand jury in its deliberations; (3) . . . prevent subornation of perjury and tampering with witnesses by targets of the investigation; (4) . . . encourage free disclosure by witnesses before the grand jury; and (5) . . . protect those exonerated by the grand jury from disclosure of the fact that they were under investigation.

*Ballas v. U.S. (In re Grand Jury Proceedings)*, 62 F.3d 1175, 1180, n.2 (9th Cir. 1995). Where a grand jury investigation has been terminated the first three factors become insignificant. *Id.* (citations omitted). Even when an investigation is closed, the fourth factor remains a consideration given "'the possible effect upon the functioning of future grand juries.'" *Id.* (citing *Douglas Oil*, 441 U.S. at 223). Courts have "substantial discretion" when determining whether grand jury transcripts should be released. *Id.* at 223.

### 2.    Propriety of Petition.

Plaintiff argues that because this discovery motion is made in the district where the grand jury convened and involves a government attorney, the court can consider this motion to be a proper petition under Federal Rule of Criminal Procedure 6(e)(3)(F). The USAO argues that Plaintiff has not presented a proper petition under Rule 6(e) for the court to adjudicate, so the request should be denied on that basis.

This court finds that the request is procedurally proper because Plaintiff served this motion, which includes the request for the grand jury materials, on an attorney for the government and on the parties to this judicial proceeding. The government and parties have had an opportunity to appear and have been heard on the issue of whether these materials should be released.

### 3.    Plaintiff's Need for the Materials Versus the Government's Interest.

Plaintiff argues that the grand jury material is needed to avoid a possible injustice in this civil case. Thus far, Defendant has selectively disclosed information related to the criminal investigation of Plaintiff. Plaintiff's claim rests on the question of whether the criminal investigation of her "was grounded in legitimate and justified concerns or [whether it] was motivated by harassment and retaliation." Pl.'s Mem. Ps&As, p.10. Because she was not charged, Plaintiff argues she is entitled to know all the information regarding why charges were not pursued, as that will answer the question at the heart of this case, which is whether the investigation was legitimate or improper. Plaintiff argues the

request is narrow because it is confined to the facts of this case and the only materials sought relate to the criminal investigation at issue.  Also, Plaintiff argues that Defendant cannot selectively use the information from the criminal investigation as both a sword and a shield.

In considering the argument in favor of disclosure, the court notes that the district judge found that Plaintiff stated at least prima facie claims for first amendment violations, intentional infliction of emotional distress, battery, trespass, false imprisonment and abuse of process, as all those claims survived the motions to dismiss.  These claims are all based on the alleged ill-motives of NCIS in their criminal investigation before the grand jury.  Because the grand jury materials go to the heart of Plaintiff's lawsuit, and are not available from any other source, they are needed to avoid a possible injustice. *See Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242 (C.D. Cal. 2009) (ordering disclosure of grand jury material in a civil rights case where plaintiff alleged prosecutorial misconduct); *Jernigan v. Richard*, 2009 U.S. Dist. LEXIS 84679 (D. Ariz. Sept. 17, 2009) (ordering disclosure of grand jury material in a civil rights case where plaintiff alleged that law enforcement failed to present exculpatory evidence to grand jury).

Regarding the government's interest, the need for secrecy is diminished where a grand jury investigation is completed. *Douglas Oil*, 441 U.S. at 222-223; *U.S. v. Fischbach & Moore*, 776 F.2d 839, 843-844 (9th Cir. 1985).  Because Plaintiff already knows she was investigated before a grand jury, the only relevant government interest in maintaining the secrecy of these proceedings is based on the need to encourage full disclosure by witnesses before future grand juries.  The court does not see any potential grave effects on future grand juries since these materials can be designated as confidential under the existing protective order.  Disclosure is appropriate where the need for the grand jury materials outweighs the public's interest in maintaining their secrecy. *Douglas Oil*, 441 U.S. at 222-223.  The court finds that Plaintiff has met her burden to show the need for the documents outweighs the government's interest in keeping these grand jury materials secret.  The court therefore grants Plaintiff's motion to disclose the grand jury materials relating to the criminal investigation of Plaintiff, pursuant to the protective order in this case.

/ / /

/ / /

**B.    USAO Research and Communications.**

**1.    Deliberative Process Privilege**.

The deliberative process privilege allows the government "to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated. *Hongsermeier v. Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010) (internal citations and quotations omitted). Documents that are both "predecisional" and "deliberative" qualify for this privilege. A predecisional document is one "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* A deliberative document is one whose "release would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* The purpose of this privilege is to protect "certain intraagency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (citations and quotations omitted).

The deliberative process privilege is a qualified one, so courts may order discovery even if the government meets its burden to show the document is predecisional and deliberative. *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The privilege can be overcome if the requesting party's need for the information outweigh's the government's interest in not disclosing it. *Id.* Once the government meets its burden to show the documents are predecisional and deliberative, the burden shifts to the requesting party to show that the privilege should be waived. *De Abadia-Peixoto v. United States Dep't of Homeland Security*, 2012 U.S. Dist. LEXIS 164388, *5-*6 (N.D. Cal. Nov. 16, 2012) (citation omitted). The factors to consider in evaluating the requesting party's burden are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *F.T.C.*, 742 F.2d at 1161. The privilege applies narrowly, and should exclude purely factual information, summaries or commentaries on past decisions. *Price v. County of San Diego*, 165 F.R.D. 614, 620 (S.D. Cal. 1996).

The USAO argues that because all documents generated within the office would have addressed

the decision of whether to prosecute Plaintiff, they are necessarily predecisional. Also, because those documents would contain opinions, recommendations or advice about the possibility of prosecuting Plaintiff, they are therefore deliberative. Plaintiff argues that her need for the information requires disclosure of that information because her cause of action turns on the government's intent, as this action turns squarely on whether NCIS engaged in a legitimate investigation or a campaign of harassment and retaliation.

The court finds that there is not enough information before it to determine the availability of the deliberative process privilege. The USAO has not provided a privilege log to help determine which items are predecisional and deliberative. While it might sound reasonable to assume that all the documents are predecisional because they concern the question of whether to prosecute Plaintiff, and deliberative because they include attorney opinions about such a decision, it also sounds reasonable that those documents might include factual information, summaries or commentary on previous decisions, or postdecisional documents. The court therefore denies without prejudice the USAO's assertion of this defense. *See Cal. Native Plant Soc'y v. United States EPA*, 251 F.R.D. 408 (N.D. Cal. 2008) (finding privilege logs did not include sufficient detail to identify deliberative material); *De Abadia-Peixoto*, 2012 U.S. Dist. LEXIS 164388 (finding privilege log insufficient and ordering in camera review of all documents asserted to be protected by deliberative process privilege).

### 2. Work Product Doctrine.

"Unlike issues of attorney-client privilege, issues concerning the work-product doctrine are procedural and thus governed by Federal Rule of Civil Procedure 26(b)(3)." *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F.Supp.2d 1084, 1090 (N.D. Cal. 2009). The attorney who prepared the work is entitled to the immunity. *Bozzuto v. Cox*, 255 F.R.D. 673, 678 (C.D. Cal. 2009).

The work product doctrine affords a qualified protection from discovery for all material obtained and prepared by an attorney or an attorney's agent "in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495 (1947); Fed.R.Civ.P. 26(b)(3)(A). It is a qualified immunity rather than a privilege and is determined by a showing of necessity or good cause. *Bozzuto*, 255 F.R.D. at 677. It is meant "to guard against the divulging of attorney's strategies and legal impressions, it does not protect *facts concerning the creation of work product or facts contained within the work product*." *Garcia v. City of El Centro*,

214 F.R.D. 587, 591 (S.D. Cal. 2003) (emphasis in original) (citations omitted).  Opinion work product, though, "containing an attorney's mental impressions or legal strategies, enjoys nearly absolute immunity and can be discovered only in very rare circumstances." *Id.*  Where the discovery of certain facts would inherently reveal an attorney's mental impressions, work product protection extends to those facts.  *Id.*; *Gen-Probe v. Becton, Dickinson & Co.*, 2011 U.S. Dist. LEXIS 27961, *7 (S.D. Cal. 2011) (Stormes, J.) (extending work product protection to contact information for witnesses because it would reveal which witnesses counsel interviewed).

To show entitlement to work product protection, the responding party must "(1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* (citing Fed. R. Civ. P. 26(b)(5)(A)).  A requesting party can overcome the immunity by showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3); *Bozzuto*, 255 F.R.D. at 678.

The USAO argues that a government attorney's report, memoranda, email or other internal documents made in connection with investigating or prosecuting a case is exempted from disclosure.  It describes the documents at issue as centering on the issue of whether to prosecute Plaintiff and if so, for what crimes.  While this general description may be accurate, the court finds that a privilege log would be more useful here.  *See Bozzuto v. Cox*, 255 F.R.D. at 677.  In any event, because Plaintiff does not focus on her substantial need for the materials and inability to obtain them without undue hardship, the USAO's general assertion of work product immunity remains unrebutted.

The court finds that the USAO has made an initial claim of work product immunity.  The USAO must now provide a privilege log to Plaintiff to legitimize that claim so that Plaintiff can assess it.  The court finds, though, that any document that includes opinion work product, i.e. any one of the USAO attorney's strategies, legal impressions or mental impressions, or a compilation of any facts that would reveal those strategies or impressions, is entitled to work product immunity.  Similarly, the mental impressions of former AUSA Rees Morgan are not subject to discovery during the deposition.  The court now turns to whether the USAO waived its work product immunity.

### 3. Waiver.

Plaintiff argues that because "the government" waived privilege it cannot now claim work product: "the government cannot invoke privilege to withhold additional materials that provide context for understanding the disclosed information." Pl.'s Mem.Ps&As, p.8.

There are several problems with Plaintiff's argument. First, she conflates the roles of attorney and client and confuses attorney-client privilege with work product immunity. For example, Plaintiff uses the word "government" interchangeably with defendant NCIS, and Defendant's attorney, the USAO. Defendant NCIS apparently waived certain aspects of its attorney-client privilege held between it and the USAO, when it produced communications between it and the USAO regarding the criminal investigation of Plaintiff. NCIS turned over those files because the motives of NCIS are at the center of Plaintiff's complaint, and such documents could reflect the motives of NCIS. But defendant NCIS held that privilege, not the USAO.

By NCIS waiving attorney client privilege, that waiver never extended as a waiver to the USAO's work product immunity, which Plaintiff argues. The USAO is the only one with authority over its own work product. The USAO has never waived work product immunity. NCIS's disclosure of its attorney-client privileged information cannot operate as a waiver of the USAO's work product.

Second, the USAO is not a defendant here. Plaintiff did not file any claims against the USAO, and the USAO has not asserted any defenses to the substance of the claims against NCIS. Therefore, the USAO has never "placed its advice to NCIS at issue." Further, NCIS has not invoked an "advice of counsel" defense. Because the advice from the USAO is not at issue, there is no waiver of work product immunity.

### III. ORDER

For the foregoing reasons, the court **GRANT in part** and **DENIES in part** Plaintiff's motion to compel. The USAO shall produce a privilege log by **January 9, 2013** in accordance with this order.

**IT IS SO ORDERED.**

DATED: December 14, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge