**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLYN MARTIN,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br>NAVAL CRIMINAL INVESTIGATIVE SERVICE, ("NCIS"); MARK D. CLOOKIE, NCIS Director; WADE JACOBSON, NCIS Acting Special Agent in Charge; MARINE CORPS WEST FIELD OFFICE; SEAN SULLIVAN, Staff Judge Advocate; MARINE CORPS RECRUIT DEPOT SAN DIEGO; GERALD MARTIN, "Jerry," NCIS Special Agent; RAY MABUS, Secretary of the Navy; UNITED STATES OF AMERICA; and JOHN DOES 1-7,<br><br>　　　　　　　　　　Defendants. | CASE NO. 10CV1879 WQH (MDD)<br><br>ORDER |

HAYES, Judge:

The matters before the Court are Plaintiff's Objections to the Magistrate Judge's Orders Determining Joint Motions for Discovery Disputes. (ECF Nos. 96, 102).

**BACKGROUND**

**I.     Complaint**

On September 9, 2010, Plaintiff initiated this action by filing a Complaint for Declaratory and Injunctive Relief and Damages against Defendants. (ECF No. 1).

Plaintiff alleges that she has worked as a federal contract investigator for the past ten years, performing mostly personnel security investigations and military criminal

defense investigations. *See id.* at ¶ 17. Plaintiff alleges that, [s]ince around June 2009, military law enforcement personnel, including [Naval Criminal Investigative Service ('NCIS')] Special Agent [Gerald] Martin, an unknown agent ... and various Military Police ... have harassed and intimidated [Plaintiff] on account of her defense investigations." *Id.* at ¶ 26.

Plaintiff alleges that her vehicle was pulled over by Military Police Officers on three occasions in June and July of 2009 as she came to and from Camp Pendleton for work. *Id.* at ¶ 27-29. Plaintiff alleges that she was detained by Military Police Officers, purportedly for speeding, when she attempted to leave Camp Pendleton on July 23, 2009. *See id.* at ¶ 29-37. Plaintiff alleges that Defendant Agent Gerald Martin ("Agent Martin") arrived after an hour and forty-five minutes and told Plaintiff that a Military Police Officer reported that she "had presented NCIS credentials at the Camp Pendleton gate." *Id.* at ¶ 37. Plaintiff denies that "false allegation." *Id.* Plaintiff alleges that her Defense Intelligence Agency credentials were confiscated and she was then escorted off the military base. *See id.* at ¶ 38. Plaintiff alleges that the California Bureau of Security and Investigative Services sent Plaintiff a cease and desist letter on August 17, 2009, ordering her to stop operating as a private investigator. *See id.* at ¶ 44.

Plaintiff alleges that, on May 3, 2010, Agent Martin and the Military Police Officer who detained Plaintiff on July 23, 2009 appeared at Plaintiff's home. *See id.* at ¶ 48. Plaintiff alleges that Agent Martin threw a piece of paper at her – a District Court Violation Notice purporting to charge her with impersonating a federal officer at Camp Pendelton on July 23, 2009. *See id.* at ¶ 49-50. Plaintiff alleges that the document "str[uck] [Plaintiff] in the face" and that Agent Martin muttered "'You've been served.'" *Id.* at ¶ 49. Plaintiff alleges that the notice was defective and that she "has never received a court date or other further notice regarding this purported charge." *Id.* at ¶ 50.

Plaintiff alleges that Lt. Col. Sean Sullivan "recently informed the chief military defense counsel at [the Marine Corps Recruit Depot] San Diego that [Plaintiff] was

banned from Building 12 at [the Marine Corps Recruit Depot] San Diego which includes the military criminal defense office, the legal assistance office, and the courtroom at [the Marine Corps Recruit Depot] San Diego." *Id*. at ¶ 53.

The Complaint purports to assert the following claims for relief: (1) retaliation for protected speech in violation of the First Amendment against Defendants Agent Martin, Doe 1, Mabus, NCIS, Clookie and Jacobson; (2) unreasonable search and seizure in violation of the Fourth Amendment against Defendants Agent Martin and Does 1-7; (3) unreasonable interference with employment in violation of the Fifth Amendment against Defendants NCIS, Clookie, Jacobson, Mabus, Agent Martin, and Doe 1; and (4) interference with right of access to court in violation of the First Amendment against Defendant Sullivan.

## II. Motions to Dismiss the Complaint / Qualified Immunity

On December 17, 2010, Agent Martin filed a Motion to Dismiss the claims of retaliation in violation of the First Amendment and unreasonable search and seizure in violation of the Fourth Amendment. (ECF No. 31). On that same day, the United States of America ("United States") filed a Motion to Dismiss Plaintiff's claims for retaliation in violation of the First Amendment, unreasonable interference with employment in violation of the Fifth Amendment, and interference with right of access to court in violation of the First Amendment on behalf of Defendants Naval Criminal Investigative Service, Mark D. Clookie; Wade Jacobson, Marine Corps West Field Office; Sean Sullivan, Marine Corps Recruit Depot San Diego, and Ray Mabus. (ECF No. 32).

On August 3, 2011, the Court issued an Order granting in part and denying in part the motions to dismiss (ECF Nos. 31, 32) filed by Defendants Agent Martin and the United States. (ECF No. 42). The Court dismissed Plaintiff's claim for unreasonable interference with employment in violation of the Fifth Amendment against Defendants NCIS, Clookie, Jacobson and Mabus. The Court dismissed Plaintiff's Fourth Amendment claim and request for damages against Agent Martin

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court further concluded that Agent Martin was not entitled to qualified immunity on the First Amendment claims at that time because "a claim of qualified immunity is more appropriately resolved at summary judgment as opposed to the motion to dismiss stage of proceedings." *See* ECF No. 42 at 15 (citing *Morley v. Walker*, 175 F.3d 756, 760-61 (9th Cir. 1999)).

On October 3, 2011, Agent Martin gave notice that he was appealing to the Court of Appeals for the Ninth Circuit from this Court's August 3, 2011 Order (ECF No. 42 at 15) denying qualified immunity. (ECF No. 48) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996); *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). This appeal remains pending. *See* ECF No. 86 (Ninth Circuit's August 7, 2012 Order noting that briefing on the appeal is complete).

### III. First Supplemental Complaint

On May 3, 2012, the Court issued an Order granting Plaintiff's request for leave to file a supplemental complaint, and denying Defendants' motion to stay the proceedings pending resolution of Agent Martin's appeal. (ECF No. 67). The Court stated:

> [T]he claim for damages against Agent Martin in his individual capacity pursuant to *Bivens* due to alleged violation of First Amendment rights is on appeal and is not within the jurisdiction of the Court. Agent Martin's likelihood of success on appeal would only effect his qualified immunity defense to the claim against him in his individual capacity for damages pursuant to *Bivens*. Agent Martin will not be subject to discovery on the claim against him in his individual capacity for damages pursuant to *Bivens* due to alleged violation of the First Amendment until the appeal is concluded. Defendants other than Agent Martin have not established that they will suffer any hardship or inequity if a stay is not granted. Defendants will be subject to discovery regardless of the outcome of Agent Martin's appeal. A stay of the entire case may impede the collection of information through the discovery process and will delay the timely resolution of this case. The public has an interest in the timely adjudication of alleged government misconduct. *See Sammartino v. First Judicial D. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002).

(ECF No. 67 at 7). On August 7, 2012, the Court of Appeals for the Ninth Circuit issued an Order denying Agent Martin's motion to stay all discovery as to all parties pending appeal. *See* ECF No. 86.

On May 7, 2012, Plaintiff filed the First Supplemental Complaint against the United States pursuant to Federal Rule of Civil Procedure 15(d). (ECF No. 68). The First Supplemental Complaint alleges "the occurrence of jurisdictional facts occurring after the original complaint was filed," *id.* at 2, and purports to assert the following claims against the United States for damages pursuant to the Federal Tort Claims Act ("FTCA"): (1) intentional infliction of emotional distress; (2) battery; (3) malicious trespass; (4) abuse of process; and (5) false imprisonment. *Id.* at 3-5.

On June 11, 2012, the United States filed a motion to dismiss the First Supplemental Complaint. (ECF No. 78). On August 1, 2012, the Court denied the motion in its entirety. (ECF No. 85).[1]

## IV. Discovery Disputes

On December 14, 2012, the Magistrate Judge issued an Order limiting Plaintiff's ability to discover certain United States Attorneys' Office ("USAO") research and internal communications. (ECF No. 94). On January 22, 2013, the Magistrate Judge issued a protective order limiting Plaintiff's ability to depose certain witnesses identified by the United States until after the deadline for filing amended pleadings. (ECF No. 99). Plaintiff filed Objections to both orders.

## APPLICABLE STANDARD

"Where a magistrate is designated to hear a discovery motion, '[a] judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law.'" *Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a) ("[t]he district judge in the case must consider timely objections [to nondispositive matters] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *See Thomas E.*

---

[1]On September 27, 2012, on joint motion of the parties, the Magistrate Judge entered a protective order governing the dissemination of certain confidential documents as the case proceeds through discovery. (ECF No. 91).

1  *Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "Review under the
2  clearly erroneous standard is significantly deferential, requiring a definite and firm
3  conviction that a mistake has been committed." *Concrete Pipe & Prod. v. Constr.*
4  *Laborers Pension Trust,* 508 U.S. 602, 623 (1993) (quotation omitted); *see also*
5  *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (same). "[T]he magistrate
6  judge's decision ... is entitled to great deference by the district court." *United States v.*
7  *Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

## DISCOVERY DISPUTE NO. 1

9  On December 4, 2012, Plaintiff and the United States filed a Joint Motion for
10  Determination of Discovery Dispute. (ECF No. 92). According to the parties, the
11  United States identified former Assistant United States Attorney ("AUSA") Rees
12  Morgan ("Morgan") as a potential witness in its initial disclosures; the parties stated:
13  "Morgan, formerly an AUSA, U.S. Attorney's Office, Southern District of California,
14  advised NCIS on the criminal prosecution of Plaintiff, involved in the issuance of a
15  citation to Plaintiff. Mr. Morgan is no longer with the U.S. Attorney's Office."
16  According to the parties, Plaintiff had issued a subpoena for Morgan's deposition, and
17  served a subpoena duces tecum on the United States Attorneys' Office ("USAO")
18  custodian of records, seeking various documents related to the criminal investigation
19  of Plaintiff. *Id.* The parties stated that they agreed to the following: "(a) Mr. Morgan
20  may be deposed regarding the investigation, (b) Plaintiff's counsel may inquire into any
21  communications between Mr. Morgan and NCIS agents concerning the investigation,
22  and (c) Plaintiff may inquire into communications between NCIS agents and AUSAs
23  as well as NCIS ROIs." However, the parties stated that they "disagree[d] about the
24  discoverability of (a) communications or information within the USAO concerning the
25  investigation, (b) research and attorney notes, and (c) grand jury materials. The parties
26  also disagree[d] about the discoverability of [AUSA Rees Morgan's] impressions about
27  the investigation of Plaintiff." *Id.* at 3.
28  On December 14, 2012, the Magistrate Judge issued an Order granting

"Plaintiff's motion to disclose the grand jury materials relating to the criminal investigation of Plaintiff, pursuant to the protective order in this case." (ECF No. 94 at 5) (citing ECF No. 91). Regarding the disclosure of USAO research and communications, the Magistrate Judge: (1) denied without prejudice the United States' assertion of the deliberative process privilege; (2) found that "any document that includes opinion work product ... is entitled to work product immunity" and "the mental impressions of former AUSA Rees Morgan are not subject to discovery during the deposition"; and (3) concluded that the United States had not waived its work product immunity. *Id.* at 5-7.

On December 28, 2012, Plaintiff filed Objections to Magistrate Judge's Order Determining Joint Motion for Discovery Dispute ("Objections to Discovery Dispute Order No. 1"), contending that the Magistrate Judge's decision to prohibit Plaintiff from discovering certain USAO research and communications was clearly erroneous and should be reversed. (ECF No. 96 at 8-18). On January 14, 2013, the United States filed an opposition. (ECF No. 98). On January 25, 2013, Plaintiff filed a reply. (ECF No. 100).

## I. Work Product Doctrine

The Magistrate Judge's December 14, 2012 Order stated:

> The USAO argues that a government attorney's report, memoranda, email or other internal documents made in connection with investigating or prosecuting a case is exempted from disclosure. It describes the documents at issue as centering on the issue of whether to prosecute Plaintiff and if so, for what crimes. While this general description may be accurate, the court finds that a privilege log would be more useful here. *See Bozzuto v. Cox*, 255 F.R.D. 673, 677 (C.D. Cal. 2009). In any event, because Plaintiff does not focus on her substantial need for the materials and inability to obtain them without undue hardship, the USAO's general assertion of work product immunity remains unrebutted.
>
> The court finds that the USAO has made an initial claim of work product immunity. The USAO must now provide a privilege log to Plaintiff to legitimize that claim so that Plaintiff can assess it. The court finds, though, that any documents that include opinion work product, i.e. any one of the USAO attorney's strategies, legal impressions or mental impressions, or a compilation of any facts that would reveal those strategies or impressions, is entitled to work product immunity. Similarly, the mental impressions of former AUSA Rees Morgan are not subject to discovery during the deposition.

(ECF No. 94 at 8).

Plaintiff contends that "the magistrate judge's ruling on the USAO information should be overturned as contrary to law or clearly erroneous" on the grounds that "the USAO is not a party to this case" and "the work product rule does not apply to materials not prepared for this case or a party to this case." (ECF No. 96 at 8). The United States contends that USAO attorney notes and research, as well as internal USAO communications, constitute privileged attorney work product because the United States became a Defendant when Plaintiff added her FTCA claims. (ECF No. 98 at 6).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "But ... those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

The United States has been a party to this case since May 7, 2012, when Plaintiff filed the First Supplemental Complaint (ECF No. 68) alleging five claims under the FTCA. In opposition to Plaintiff's Objections to Discovery Dispute Order No. 1, the United States submitted a privilege log and related declarations. In the privilege log, the United States lists 43 USAO documents that it contends are privileged pursuant to the work product doctrine. After review of the privilege log, the Court finds that the documents described in the privilege log were prepared "in anticipation of litigation" by the USAO – a "representative" of the United States. Fed. R. Civ. P. 26(b)(3)(A). Accordingly, to the extent the Magistrate Judge's December 14, 2012 Order found that "the USAO has made an initial claim of work product immunity," the Court does not find that the decision of the Magistrate Judge was "clearly erroneous or contrary to law." *Rockwell Int'l, Inc.*, 712 F.2d at 1325.

**II.    Waiver of Work Product Doctrine**

1    Plaintiff asserts that the United States "has repeatedly claimed Plaintiff was the
2 subject of legitimate criminal investigation rather than a campaign of retaliation and
3 harassment" as a defense in this case. (ECF No. 96 at 5). Plaintiff contends that any
4 privilege arising under the work product doctrine was waived when the United States
5 placed the legitimacy of the investigation into Plaintiff's conduct at issue and
6 selectively disclosed materials related to the investigation.

7    The United States asserts that "[t]he issue is NCIS' motive for investigating
8 Plaintiff; not the USAO's motive for prosecuting Plaintiff. All of the issues pertaining
9 to the USAO subpoena must be evaluated in this context." (ECF No. 98 at 6). The
10 United States contends that it has not selectively produced documents, but rather, "has
11 produced communications between NCIS and AUSAs ... [that] could be considered
12 relevant to possibly indicate NCIS' motive or intent. Communications within the
13 USAO, with no involvement from NCIS, would have no bearing on NCIS' motive or
14 intent." *Id.* The United States asserts that it is only invoking the "advise of counsel"
15 defense regarding the allegedly wrongfully issued citation, and acknowledges that "it
16 has waived its privileges ... as to the issuance of the citation." *Id.* at 6. The United
17 States "seeks a protective order only to the extent Plaintiff seeks to ask Morgan about
18 his mental impressions, conclusions, opinions or legal theories extending beyond the
19 issue of the citation." *Id.* at 7.

20    "Subject matter waiver is governed by Federal Rule of Evidence 502, which
21 applies to disclosures of information covered by attorney-client privilege and work
22 product protection." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468,
23 470-71 (N.D. Cal. 2012); Fed. R. Evid. 502. Pursuant to Rule 502(a), a waiver of the
24 attorney-client privilege or work product protection "extends to an undisclosed
25 communication or information in a federal ... proceeding only if: (1) the waiver is
26 intentional; (2) the disclosed and undisclosed communications or information concern
27 the same subject matter; and (3) they ought in fairness to be considered together." *Id.*
28    The Magistrate Judge's December 14, 2012 Order stated:

> Plaintiff argues that because 'the government' waived privilege it cannot now claim work product: 'the government cannot invoke privilege to withhold additional materials that provide context for understanding the disclosed information.' Pl.'s Mem. Ps&As, p.8.
>
> There are several problems with Plaintiff's argument. First, she conflates the rules of attorney and client and confuses attorney-client privilege with work product immunity. For example, Plaintiff uses the word 'government' interchangeably with defendant NCIS, and Defendant's attorney, the USAO. Defendant NCIS apparently waived certain aspects of its attorney-client privilege held between it and the USAO, when it produced communications between it and the USAO regarding the criminal investigation of Plaintiff. NCIS turned over those files because the motives of NCIS are at the center of Plaintiff's complaint, and such documents could reflect the motives of NCIS. But defendant NCIS held that privilege, not the USAO.
>
> By NCIS waiving attorney client privilege, that waiver never extended as a waiver to the USAO's work product immunity, which Plaintiff argues. The USAO is the only one with authority over its own work product. The USAO has never waived work product immunity. NCIS's disclosure of attorney-client privileged information cannot operate as a waiver of the USAO's work product.
>
> Second, the USAO is not a defendant here. Plaintiff did not file any claims against the USAO, and the USAO has not asserted any defenses to the substance of the claims against NCIS. Therefore, the USAO has never 'placed its advice to NCIS at issue.' Further, NCIS has not invoked an 'advice of counsel' defense. Because the advice from the USAO is not at issue, there is no waiver of work product immunity.

(ECF No. 94 at 9).

In this case, the United States has provided information that AUSA Morgan had regarding the issuance of the citation to Plaintiff because the "advice of counsel" defense has been asserted as to that issue. While the Magistrate Judge's December 14, 2012 Order incorrectly stated that "NCIS has not invoked an 'advice of counsel' defense," this finding has no effect on the Court's ruling (ECF No. 94 at 9).

Pursuant to Rule 502(a), any waiver of the work product doctrine in this case, besides on the citation issue, encompasses only what has been disclosed to Plaintiff throughout the course of this litigation, i.e. USAO information conveyed to NCIS regarding the USAO's investigation of Plaintiff. Work product documents *not* conveyed to NCIS are not probative to determine NCIS' motive or intent for investigating Plaintiff. The Court does not find that the decision of the Magistrate Judge was "clearly erroneous or contrary to law." *Rockwell Int'l, Inc.*, 712 F.2d at

1325.

### III. Deliberative Process Doctrine

"[T]he deliberative process privilege permits the government to withhold documents that 'reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated.'" *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010) (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975)). Documents must be both "predecisional" and "deliberative" to qualify for this privilege; a document is predecisional if it was "'prepared in order to assist an agency decisionmaker in arriving at his decision,'" and deliberative if its release would "'expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Hongsermeier*, 621 F.3d at 904 (citing *Carter v. U.S. Dep't of Commerce,* 307 F.3d 1084, 1089 (9th Cir.2002); *Assembly of Cal. v. U.S. Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir.1992)). "[I]n order to protect a document as 'deliberative' under the deliberative process privilege, an agency must show enough detail so that the court can determine 'how each document fits into the deliberative process.'" *California Native Plant Soc'y*, 251 F.R.D. at 413 (quoting *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980)).

The Magistrate Judge denied without prejudice the USAO's assertion of the deliberative process privilege as a defense, finding "that there is not enough information before it to determine the availability of the deliberative process privilege. The USAO has not provided a privilege log to help determine which items are predecisional and deliberative." (ECF No. 94 at 7). Because the Magistrate Judge was not provided with a privilege log, the Court does not find that the Magistrate Judge's decision was "clearly erroneous or contrary to law." *Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983); *see also Cal. Native Plant Soc'y v. United States EPA*, 251 F.R.D. 408 (N.D. Cal. 2008) (finding privilege logs did not include sufficient detail

to identify deliberative material); *De Abadia-Peixoto*, 2012 U.S. Dist. LEXIS 164388 (finding privilege log insufficient and ordering in camera review of all documents asserted to be protected by deliberative process privilege).

The privilege log submitted by the United States in opposition to Plaintiff's Objections to Discovery Dispute Order No. 1 lists six documents, each written by Morgan, that purportedly fall within both the deliberative process privilege and the work product doctrine. *See* ECF No. 98-1. In light of the Court's determination that the Magistrate Judge did not clearly err in determining that these documents are protected work product, the Court need not consider at this time whether the deliberative process privilege would also apply.

The Court overrules Plaintiff's Objections to the Magistrate Judge's Order on Discovery Dispute No. 1.

## DISCOVERY DISPUTE NO. 2

On January 4, 2013, Plaintiff and the United States filed the Joint Motion for Determination of Discovery Dispute No. 2. (ECF No. 97). The parties stated: "Plaintiff has named one individual, NCIS Special Agent Gerald Martin in his individual capacity. Plaintiff also sues seven Doe Defendants in their individual capacities. Plaintiff has not ruled out seeking to amend the complaint to add witnesses as defendants in their individual capacities." (ECF No. 97 at 2). The parties stated:

> This dispute arose in November 2012, after Plaintiff served three deposition notices on current and former federal employees who are not parties to this lawsuit, but who appear on the government's list of potential witnesses provided to Plaintiff through initial disclosures. On November 7, 2012, counsel for Agent Martin sent an e-mail to Plaintiff's counsel asking that Plaintiff either (1) name witnesses as individual-capacity defendants, so that they could assert a qualified immunity defense, or (2) stipulate that Plaintiff will not seek to name those witnesses as individual-capacity defendants in the future.... Plaintiff's counsel responded that it is premature, and that it would be professionally irresponsible, to either seek to name witnesses as individual-capacity defendants or to stipulate to never name them as individual-capacity defendants. Based on this dispute, the first round of depositions were postponed.
>
> After meeting and conferring on November 14, 2012, the parties were able to partially resolve the dispute with the following agreement: if Plaintiff represented in good faith that based on the information now known to her, she had no current intention of adding a deponent as a

> defendant, the government would not object to that deposition moving forward. Plaintiff made this representation for three government employees, two of whom were deposed in December 2012.
>
> The remaining dispute centers on the proposed depositions of two other government employees: Richard Pandis, a special agent with the Office of Inspector General for the Office of Personnel Management, who investigated Plaintiff for improper use of government credentials; and Will Schmitt, a former Special Assistant United States Attorney who advised NCIS on its investigation of Plaintiff.... The government has no objection to allowing these and future depositions to proceed if Plaintiff represents that she has no current intention of adding these deponents as defendants based on the information provided in discovery to date. Plaintiff states that she is not in a position to make such a representation for Pandi, Schmitt, and possibly others.
>
> Consequently, the government seeks a protective order that precludes Plaintiff from deposing these and other witnesses until after the deadline to amend pleadings. The government also concurrently seeks and extension of the discovery deadline to allow Plaintiff sufficient time after that deadline to depose any additional witnesses.

*Id.* at 2-3. The United States requested a protective order precluding Plaintiff from deposing Pandis, Schmitt and other witnesses until after the deadline to amend pleadings in order "to ensure that its employees retain their right to assert qualified immunity before they are compelled to provide testimony that may later be used against them in this lawsuit." *Id.* at 3. Plaintiff contended that she has sought to depose fact witnesses, i.e. Pandis and Schmitt, on claims for which qualified immunity does not apply. *See id.* at 4.

On January 22, 2013, the Magistrate Judge issued an Order granting the United States' request for a protective order. (ECF No. 99). The Magistrate Judge found that, "based on the allegations in the complaint and Defendants' initial disclosures, it seems highly probable that [Special Agent] Pandis is the Doe 1 defendant [named in the Complaint]." *Id.* at 5. The Magistrate Judge stated:

> If SA Pandis is added as a defendant and sued in his individual capacity, as a government employee he would be entitled to assert qualified immunity, just as SA Martin has done. The district court has said that it will resolve whether SA Martin has qualified immunity at the summary judgment stage. In the pending interlocutory appeal, however, the Ninth Circuit is determining whether qualified immunity is available for SA Martin at this point in the litigation. Given this appeal and potential for availability of qualified immunity, the district court prohibited discovery of SA Martin with regards to the first amendment *Bivens* claim. If SA Pandis is added as a defendant, he should receive the

> same treatment and not be subject to discovery of the *Bivens* claim until the appeal is resolved.
>
> While SA Pandis is currently subject to discovery as a witness for the FTCA and injunctive relief claims, the court will allow him to be deposed only one time. If Plaintiff chooses to depose him before the deadline to file amended pleadings, she may not inquire as to any issues that could relate to the first amendment *Bivens* claim (even if they also relate to the FTCA and injunctive relief claims), and, she cannot depose him again. Otherwise, Plaintiff can wait to depose SA Pandis and other witnesses who are potential Defendants until after the deadline to amend the pleadings has passed, and when the Ninth Circuit has confirmed whether qualified immunity is available at this time....
>
> Good cause exists to grant Defendants' protective order because if any of the witnesses seeking to be deposed are later added as Defendants, they will suffer irreparable harm in losing their right to not be subject to discovery until qualified immunity is resolved....

*Id.* The Magistrate Judge stated: "If Plaintiff seeks to amend the pleadings to substitute in [potential defendants Pandis and Schmitt] as Doe Defendants, she must do so by February 15, 2013. The March 29, 2013 deadline remains in place, though, for the substitution of other Doe Defendants." *Id.* The Magistrate continued the deadline to conduct factual discovery of any individuals whom Plaintiff substitutes in place of Doe Defendants until 60 days past March 29, 2013.

On February 5, 2013, Plaintiff filed the Objections to Magistrate Judge's Order Determining Joint Motion for Discovery Dispute No. 2 ("Objections to Discovery Dispute Order No. 2"). (ECF No. 102). On February 25, 2013, the United States filed an opposition. (ECF No. 105). On March 11, 2013, Plaintiff filed a reply. (ECF No. 107).

## I.   Contentions of the Parties

Plaintiff contends that the Magistrate Judge's January 22, 2013 Order "is contrary to law and clearly erroneous." (ECF No. 102 at 16). Plaintiff contends that the doctrine of qualified immunity applies only to named defendants in their individual capacities, and that the United States "cannot prevent the depositions of fact witnesses on claims to which qualified immunity does not apply," such as claims for injunctive relief under the First Amendment and claims for damages under the FTCA. *Id.* Plaintiff contends:

> The witnesses identified by the government will suffer no prejudice from

1
2
3
4
>   complying with their duty to testify in the same way as any other witness. Even if the witnesses were named as defendants and prevailed on qualified immunity, they would have to give the same testimony at deposition, because the claims against the government overlap with the facts underlying any potential *Bivens* claim. The depositions must therefore occur sooner or later, and there is no basis for the government's continued obstruction of routine discovery.

5 *Id.* at 6-7. Plaintiff contends that the Magistrate Judge's ruling "frustrates the Court's

6 orders and unjustifiably impedes discovery allowed by the court." *Id.* at 19.

7 The United States contends that the Magistrate Judge's ruling is not clearly

8 erroneous:

9
10
11
12
13
14
>   [A]s the Magistrate Judge correctly recognized, 'if any of the witnesses seeking to be deposed are later added as Defendants, they will suffer irreparable harm in losing their right not to be subject to discovery until qualified immunity is resolved.' [(ECF No. 99 at 5)]. The Magistrate Judge's ruling adheres to a long line of Supreme Court precedent that qualified immunity requires government employees to be given an opportunity to seek dismissal of the claims against them before they are subjected to discovery. Notably, the Magistrate Judge did not preclude Plaintiff from deposing anyone, and the Magistrate Judge even set procedures to allow Plaintiff to immediately depose the witnesses at the center of the current dispute.

15 (ECF No. 105 at 6).

16 **II. Discussion**

17 The Magistrate Judge has discretion to weigh the interests of the parties and to

18 set deadlines for amending the complaint and taking depositions. However, the Court

19 finds no legal basis to support the Magistrate Judge's conclusion that Pandis and

20 Schmitt, if deposed before the deadline to amend pleadings, "will suffer irreparable

21 harm in losing their right to not be subject to discovery until qualified immunity is

22 resolved." (ECF No. 99 at 5). Pandis and Schmitt cannot assert qualified immunity at

23 this stage of the proceedings because they have not been named as defendants. *See*

24 *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) ("Qualified ... immunity is an

25 affirmative defense that must be pleaded by a defendant official."). Even if Pandis

26 and/or Schmitt were named as defendants, depositions may at times be taken before

27 qualified immunity issues can be resolved. *See Crawford–El v. Britton,* 523 U.S. 574,

28 593 n. 14 (1998) ("Discovery involving public officials is indeed one of the evils that

*Harlow* aimed to address, but neither that opinion nor subsequent decisions create an immunity from *all* discovery. *Harlow* sought to protect officials from the costs of broad-reaching discovery, and we have since recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.") (quotation omitted).  Moreover, even if qualified immunity is granted to Martin and/or other unnamed defendants, i.e. Pandis and Schmitt, those individuals are subject to deposition as non-parties on claims arising from the same set of factual allegations underlying the *Bivens* claims, including Plaintiff's FTCA claims for damages and her First Amendment claim for injunctive relief. *See Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (explaining that the "right to [qualified] immunity is a right to immunity *from certain claims,* not from litigation in general"); *see also Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987) (noting that if the defendants' actions are not those that a reasonable officer could have believed lawful and "if the actions [defendant] claims he took are different from those the [plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [defendant]'s motion for summary judgment on qualified immunity grounds can be resolved."); *Meiners v. University of Kansas*, 359 F.3d 1222, 1233 n. 3 (10th Cir. 2004) (explaining that qualified immunity is applicable only against claims for monetary damages, and has no application to claims for declaratory or injunctive relief; also explaining that qualified immunity is applicable only to claims against officers in their individual capacities, and that official-capacity claims, being the equivalent of a claim against an entity, are not subject to qualified immunity).

The Court sustains Plaintiff's Objections to the Magistrate Judge's decision on Discovery Dispute No. 2, and vacates the January 22, 2013 Order.

On April 12, 2013, the Magistrate Judge issued an Order denying Plaintiff's request to extend the deadline to file amended pleadings to add new parties, stating:

> Plaintiff mad[e] no showing that she attempted to comply with [the]

> deadline set. Rather, she made a tactical decision not to depose any witnesses or move to add any new *Bivens* defendants in compliance with [the Court's] deadlines.... The denial, however, is *without prejudice*, in the event the district judge sustains Plaintiff's objections and allows her to depose potential *Bivens* defendants on *Bivens* claims before they are named as *Bivens* defendants in this lawsuit.

(ECF No. 112 at 3). The Court granted Plaintiff's request to continue the fact discovery cutoff "to 60 days following the issuance of [a] ruling on both of Plaintiff's objections to this court's discovery orders." *Id.* at 4.

Due to the Court's decision to sustain Plaintiff's objections and allow the depositions of potential but currently unnamed Defendants, Plaintiff may file a renewed motion to extend the deadline to file amended pleadings within thirty days of the date of this Order.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Objections to Discovery Dispute Order No. 1 (ECF No. 96) are **OVERRULED**. Plaintiff's Objections to Discovery Dispute Order No. 2 (ECF No. 102) are **SUSTAINED**. The Magistrate Judge's January 22, 2013 Order is **VACATED**. Within thirty (30) days of the date of this Order, Plaintiff may file a renewed motion to extend the deadline to file amended pleadings.

DATED: June 11, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge